Case number 23-1781 Sacred Heart of Jesus Parish et al. v. Dana Nessel et al. Oral argument is not to exceed 15 minutes per side. Mr. Barnett for the appellants. Good afternoon, Your Honors. I'm Cody Barnett, and I represent Sacred Heart in this matter. I've reserved five minutes for rebuttal. May it please the Court. Your Honors, I'd like to pick up with where my colleague in the last case at bar left off, which is what is the credible threat of enforcement here. And as Judge Stranch was indicating, I'd like to contextualize it to Sacred Heart. Sacred Heart filed suit within just a month of Michigan reinterpreting its civil rights laws here. And so there, of course, was no credible threat of enforcement against Sacred Heart specifically because it brought suit as soon as those laws were changed. But under Michigan's theory, a plaintiff would never have the ability to bring a pre-enforcement challenge against any new law until there had been a large pattern of identical comparators that had been prosecuted. That would turn what the Supreme Court said an SBA list on its head. An SBA list, the Supreme Court never indicated that new laws could not be challenged or that plaintiffs could not seek their right to, could not seek to vindicate their rights to speak for the first time. They said as long as the plaintiff had a credible threat of enforcement against it, they could bring suit. And isn't that the key, is a credible threat of enforcement against that entity? That is correct, Judge Stranch. And so what you look at to determine a credible threat is what has the state actually prosecuted, not in terms of who the state has prosecuted, but what is the target that the law goes after. And in this case, we have pointed to several instances of speech that the state has investigated and prosecuted and similar constitutional conduct the state has investigated. It doesn't matter that it doesn't come from a religious school. It matters that it's the same exact type of things that Sacred Heart wants to say and that Sacred Heart itself wants to do. Why isn't it a valid distinction that Sacred I think the state could understandably say that that implicates all sorts of different constitutional doctrines than would another entity saying the same thing. That may be the case, Your Honor, but given the opportunity, the state has not said that. In fact, the state... That's essentially what it said by suggesting that it might treat you differently because of the provisions of the statute that have the constitutional scrutiny baked into them. Respectfully, Your Honor, Sacred Heart takes a little comfort from that because Sacred Heart wants to put, for instance, a statement on its website that affirms its beliefs that God created men and women and that God created marriage for men and women. And those are the very types of speech that the Studio 8 Hair Salon was prosecuted for. And Michigan hasn't suggested that that prosecution, that investigation was determined because it's a hair salon and not a church. In fact, in a press conference after those charges were filed and an investigation was opened, the Michigan Civil Rights Department made it very clear that it was the speech alone that triggered that investigation. And so Sacred Heart has no extra protections that it can rely on if it posts that statement on its website, which is exactly why it seeks to vindicate its constitutional rights here in this pre-enforcement challenge. Because every day this litigation goes on, Sacred Heart lives under the shadow that the state is going to prosecute it simply for existing as a Catholic school. It has a statement that it wants to put on its website that it has refrained from doing so. It has open positions, teaching positions, positions that we think fall squarely within the ministerial exemption that the state has not disavowed. Have you made a request for a bona fide occupational exemption? Respectfully, Your Honor, we don't think that we need to do that. For the reasons my colleague cited under FEC versus Cruz, the Supreme Court said that a plaintiff does not have to submit to an unconstitutional process in order to vindicate the constitutional rights at the process. But even setting that aside, Michigan has been very rarely granting the BFOQ requests and they only exist for five years. And as the Supreme Court said in U.S. v. Stevens, constitutional rights do not exist at the noblesse oblige of the government. You know, it's not on Sacred Heart's, it's not its responsibility to ask this government whether it can operate according to its constitutional freedoms. No request for a declaratory statement from this entity either? We think that would be futile for the same reasons, Your Honor. The Michigan Civil Rights Department has made... You think it would be futile or you think it would be illegal or inappropriate under the Constitution? Both, Your Honor. We think that Michigan Civil Rights Department has made its position clear during legislative history. So if someone has said, I ascribe to the house of God, religious faith, and I want to hire people who also ascribe to that and perhaps make statements like you do on a particular arena or I don't want African Americans to work for me or I cannot have women working for me, and that's my religious faith, and I have seen this state entity go after people in religious circumstances who rely on their faith, and I will not ask for a bonafide exemption. I will not ask for a declaratory judgment. I stand on my religious rights with the house of God to do whatever I want to within my own organization. That's a standing case also in your estimation. I think that's correct, Your Honor. I think that person would have standing. Whether or not they succeed on the merits is a separate question, but I think if they could point to the fact that what they want to do is speech and they could point to these similar instances where that exact type of speech has been prosecuted in the state, I think that does give them a credible threat of enforcement. It doesn't answer all the other factors that this court has looked at, but I do think that it goes to that credible threat. And does it matter that the investigations that you look at were brought by private citizens to the agency or to the commission to do the investigation as opposed to the commission itself undertaking independent enforcement of ELCRA? I actually think that cuts in Sacred Heart's favor, Your Honor, for two reasons. I think the first reason is that under McKay, this court does look at the ease of enforcement. And when private parties are bringing complaints to the commission, that makes it easier to enforce because it means that anyone can file a complaint. I think the second reason that it heightens the credible threat here that Sacred Heart faces is that the Michigan Civil Rights Department isn't weeding out cases that are based on speech. Take the Studio 8 hair salon as another example here. If the Michigan Civil Rights Department was sincere in saying that, you know, of course we're not going to enforce this law against First Amendment rights, then that case would have been weeded out up front because it was speech alone that they said that triggered that investigation. And so it's cold comfort to Sacred Heart to say that your speech will be protected when there is a comparator on the books whose speech was not protected, whose speech did trigger an investigation that was not weeded out at the outset, even though it may have been a private complainant that brought it to the commission in the first place. How would they be able to weed it out if you refused to respond to the investigatory request? I think in the Studio 8 example specifically, there was nothing needed for the state to say this is speech, we do not have the ability to enforce this right against speech alone. It said there was no declination of service. It was just speech. And so in a different case, if there had been a declination of service, there had been some type of conduct there, but because it was just speech, the state launched this investigation and did not do any gatekeeping role up front to say, well the First Amendment applies against this speech alone, there's no conduct that we see here that would trigger, we're not going to continue this investigation further. And so Sacred Heart has no... Is that not a merits part of the issue? Would that not be them interpreting ELCRA itself as to what the extent of its reach is? Aren't we looking at something preliminary? I'm struggling to... I think all of us recognize the importance of the issues here and the importance of religious entities' ability to act on their own faith and beliefs, but the question here is, what does it take to bring a case before a court as opposed to beginning with the administrative opportunities and seeing that through to understand whether there is standing that remains for individuals who want to bring claims in court? Well, Judge Stranch, I think to your first point, there's never been a requirement in either this Court's case law or the Supreme Court's case law that a plaintiff has to go through the state administrative process first to bring a pre-enforcement challenge. Because in essence, that would almost do away with pre-enforcement challenges in certain contexts. And that's never been the position of the U.S. Supreme Court or of this Court's case law. Instead... But aren't those... I'm just looking back at our old case law and even SBA, all of those had particular issues that were looked to and were a part of the record. And here, my understanding is your claim that you do not have to provide the sort of information or even the opportunity to the Commission itself to be able to ascertain what's covered and what's not. I guess that is the core of your position, right? As to the specifics, Your Honor, we have put in our complaint the exact statements that we want to put on our website, the exact positions that we want to hire for, the policies that those employees will be expected to abide by, the policies that students will be expected to abide by, including pronoun policies, restroom policies, sports teams policies. We have brought forth every concrete allegation the State can need, except for a complainant in hand. Can I ask you to clarify that so you... As I understand your complaint, there were an... Is it an art teacher and a coach, I think, you have open positions for? Correct. So is this case solely about those positions, or is this case about every employee position at Sacred Heart School? Those are the open positions that we want to advertise for now, and so that's the speech component of it, but we do believe that as a religious school, that it's important that the school maintain its Catholic identity. And one way that it does that is by requiring all employees to abide by the Catholic faith. So your injunction would be that these protections can apply to any employee then, I guess? I think that's right, Your Honor, and that's really a scope of relief problem to be settled later by the district court, and something that the State could do if there was a particular circumstance that did arise, is the State could ask the court to modify the injunction and show that it satisfies strict scrutiny in that instance. But is it... So it's not a facial challenge? Correct. It's an as-applied challenge. But it's as-applied to every employee, so we'd have to go through every position at the school and determine that you have a constitutional right for that? I think that is correct. Fairly extensive case, I suppose, unless you think it's just going to be an all-or-nothing type idea. I think it likely would be an all-or-nothing type of idea, Your Honor, but again, I think that the burden would be on the State that if there was a circumstance that arose where the State thought it could satisfy strict scrutiny and overcome the First Amendment protections that Sacred Heart has to order its internal affairs the way that it wants, that it could ask for a modification of the injunction in that instance. And since we're talking about the injunction, Your Honors, again, every day that this litigation goes on is a day that Sacred Heart, which has existed for centuries, for a century rather, it's not able to live out the Catholic community that it promised parents that it would be because it can't post statements on its website. It can't hire employees that it wants to hire. It lives under the shadow of fear that Michigan is going to bring an enforcement action against it simply because it's existing as a Catholic school. And so that's why we would respectfully request not only that this Court reverse and reinstate standing but also instruct the District Court to enter the preliminary injunction while this case pens. Thank you. Thank you. You have your rebuttal time. Hello again, Your Honors. You ready? One of the things Sacred Heart is indicating is they want to post and they can't. There's nothing the State Defendants have done to make them not post what they want to post. That is a self-inflicted, imposed chill and the Courts have clarified that subjective chill alone is not enough. They need a credible threat of enforcement or the actions. Well, that was going to be one of the questions I asked in this case. So would you disavow, so we know the exact speech, they've attached it to their complaint. Would you disavow that the act would apply to that speech? Your Honor, I don't know exactly what those postings say as I stand here, but I understand your point on questioning is they want it for everyone. And that isn't just we get to allege this is what we want to post and it's a ministerial case. It has to be proven. If you look at the Hazana Tabor case, the Supreme Court was ruling on a religious exemption and they wouldn't rule on all the other hypotheticals that the EEOC put before it and they said we'll rule on those cases when they come before us with those set of facts. That's what would have to be done here. So them putting in a complaint what they want to do doesn't mean it doesn't need to be looked at to make sure it's accurate because the ministerial exception has been applied in many cases that it's not always a given for every one of your staff. You have to prove that there's some ministerial duty. It doesn't have to be 100% of your duties, but you do have to have some element. What about students? So I mean I'm looking at Exhibit 7 and it says, so we will decline to affirm any sexual identities that violate Catholic doctrine and contradict any student's or employee's fundamental identity as a son or daughter of God. So they want to post that on their website. So it would implicate the educational provisions. And the question is would that, the publication provisions for that. And the question is would that violate the publication provisions? And you're not going to disavow, I take it? In total and with what we have here, I can't disavow. I don't think there's a case-by-case with respect to students. I see your point with respect to employees because if it's tied to the particular positions, I'm not seeing the same thing with respect to students. Well one, I don't have authority to make those decisions for the commission here and I don't have that question that I've asked them. So I couldn't disavow anything here today. But I could indicate that if they have a student that they excluded from their school who filed a complaint with the MDCR, they would have a set of facts or they could seek declaratory relief before it even happens and get some information from the commission. But not in this catch-all. Anything we do should not, we shouldn't have to answer any of your questions. They're willing to bring it to this court but they're not willing to bring it before the administrative agency who does have jurisdiction to give them some guidance and some information on specific facts. I'd also like to touch on the BFOQ process. I want to make it clear, I don't know if it was not clear from our briefs, the BFOQ process does not grant or deny a constitutional freedom. They have it whether they ask for a BFOQ or not. The only thing the BFOQ does is it provides them with a burden shifting. So if they have a BFOQ that they've received in the last five years on a particular position, like let's say their pastor or minister or priest, then if a complaint is filed, it's already been proven, they've met their burden that they qualify for the exemption. But if they don't get it, it doesn't mean they can't assert it. It's not a required process. It's just one that if they really want peace of mind, if that's really what they're looking for is to figure out what can we do and what can't we do, that is the way they should go about doing it or a declaratory remedy. And how do you respond to their argument that the fact that you want to ask those questions impacts and detrimentally impacts their constitutional rights? I have not seen any authority that they've provided that an inquiry in itself infringes on their rights. There is case law for the proposition that you can challenge a process that you think is defective without having to go through the process and having your claim denied. In the First Amendment context, permitting processes, you don't have to have a permit to speak denied if you think the requirement of having to go through the process is unconstitutional. I mean, there is an analogy to that if their claim is the requirement that we have to go through the BFOQ process is itself the constitutional injury. There are cases where there doesn't have to be action where they can have it. I think if the court, though, looks at the body of case law on the cases where standing was granted in a pre-enforcement challenge, there's more. There's more than there is here. If you look at Block v. Campanella, that case like the AG had already advised that the action that Block was going to engage in was prescribed by the act. You have laws in some cases, like the Block case, which are more specific. LCRA is broadly written because we're trying to make sure our Michigan employers and schools and housing is not discriminating. So it's broader than a lot of these cases. Block was transporting wine across state lines. It's a very specific statute. They had an answer that their activity was illegal. So you're arguing that there's a distinction between targeted statutes and this general statute? I think in this case there has to be. In a lot of the targeted cases also, Your Honor, there's criminal penalties. The Michigan Department of Civil Rights Act is not a criminal statute. It's a remedial statute. There might be some injunctive relief, some damages, but there's no threat of jail time like there is in a lot of those cases. And does your declaratory judgment, is there a requirement that they request as to particular conduct, or can they ask for a declaratory judgment on the applicability of the act itself? It has to be specific. If you look at Michigan Administrative Rule 37.20, it says you can get a declaratory ruling from the commission if no complaint is pending. So that's the first problem. You can't wait until someone files a complaint and then ask for declaratory relief. But prior to a complaint being filed, the interested person has to file a petition which includes a clear and concise statement of facts and a legal brief citing legal authorities relied upon. If the declaratory ruling is issued, it is then binding on the commission and cannot be retroactively changed. And I know that was mentioned in maybe the earlier oral argument, that it can be prospectively changed. But that protects your conduct. You at least know that unless it's revoked, that your activity has been approved by the commission as being allowed. So yes, the rule requires, I haven't seen one issued or the criteria, but based on the rule, it does say that you have to have a clear and concise statement of facts. So I think that's more of what we're looking for in this case with standing. Like, there is some case that you are trying to get information from us on. And the commission wants to construe things on a case-by-case basis because, as you can see in this case, there are so many possibilities. There are so many applications of the act. There are so many employment positions that I think ruling on them in a generalized manner would not serve to help religious entities know what they could or couldn't do unless they had specifics. Unless what their request is, is to be totally exempt. Unless their request is that we can't be touched by Michigan law on non-discrimination rules regardless, which it appears to be their position. But isn't that a position? So that might be a broad position. Maybe it's questionable on the merits. But since we're about standing, how do those two interrelate? Because their position seems to be you can't touch us. Therefore, the threat that, I mean, I think you would disagree with that. I think you've already said that in your briefs. Why wouldn't that be enough to at least raise that broad claim? Because I think the commission has taken the position that no, you don't have a categorical exemption. So that does suggest that there is at least some room for application of this statute here. Under a particular fact pattern and scenario, which we don't have before us, there may be the ability to enforce an element of ELCRA where they have done something unlawful under the act and they don't have a religious exemption for it. I'll also note that the indication that they don't have, the credible threat doesn't have to be a religious employer. I don't understand how that would be the applicable rule because religious employers would be treated differently. If they have a minister, they can do things that a normal employer, like a Burger King, can't do when it comes to the hiring of their staff for ministerial reasons. So they absolutely should have a case that's more akin to what they're doing as to religious employers and not just any generic employer. And also the statistics regarding agency enforcement. They cover the whole state of Michigan. They get lots of complaints. The fact that there are sex discrimination complaints in and of itself does not tell this court whether they are based on gender identity or sexual orientation. Historically, sex has been protected and there have been claims regarding sex before. But there's nothing before this court to demonstrate that the amendment to the Elliott-Larsen Civil Rights Act would be enforced against these individuals because there's no comparator that's similar. And I don't think it has to be exact. Our position is not that they need an exact comparable, but something more to establish to this court that there's a controversy ready to be resolved. And I think Studio 8 is a different case because they didn't claim, she didn't claim it was religious speech. And that's what this case is. This case is about religious institutions and there's a freedom of speech element. But how it will be applied to a religious employer is different. She's opened her doors to the general public. She is not a church. She has not espoused any religious beliefs. And the act does prevent Michigan employers from posting that certain people are unwelcome in their place of business. I don't have anything further unless the court has any questions. No, thank you. Thank you. Four quick notes on rebuttal, Your Honor. First, Judge Murphy, to the last colloquy that we had. If we get a preliminary injunction that covers the two open positions that we have, that would be all that we would need at this stage in the litigation. So there would be no need at this point to determine any other positions because that rule would cover what we are seeking at this moment. Second, to answer some more further questions about the BFOQ process and the declaratory judgment process, not only do we think that it would be futile for us to ask those things because, again, the commission could disavow here just as much as it could in that process. But we also are avoiding that process because under Michigan law, it opens us up to an investigation simply by going through that process itself. And so again, right back to what Judge Murphy alluded to, to submit to that process not only would be unconstitutional, but would do the very harm that we are trying to avoid by bringing a pre-enforcement action. What do you make of... So I understand the argument that having to go through a process is itself an Article III injury if you think the process itself is defective. But this friend on the other side suggested it's voluntary. Don't you think that undercuts the idea? So you don't have to go through it. The BFOQ exemption still exists. And so you can assert it in litigation. So does that eliminate the idea that the process itself is the injury? I don't think so, Judge Murphy. I think because the very fact that Sacred Heart doesn't have any assurance that the state won't pull it into litigation and make the very argument that it's making here. Again, there's no requirement in either this court's case law or the Supreme Court's case law that you have to go through and exhaust the administrative procedure first. In fact, that's the very reason pre-enforcement challenges exist, is to vindicate these rights on the front end. And so I think because the state is saying that these things, that we put very specifically and concretely in the complaint, an art teacher and a coach, the state will not say one way or the other whether those qualify under its process. I think it just goes, again, to show the futility of going through that and why we have brought the premium. What I'm struggling with is that you say at the beginning, and you have pled two positions, and I assume you've put in all the facts that you want to say on those two positions. So how is that different, a greater burden than bringing this lawsuit? If you took it to the commission and said, I want a bona fide occupational qualification exemption, or I want a declaratory judgment on these two people, and I've given you all of this information about them, what are you opened up to more there with the specificity that you've provided than you would by coming here and requesting now what is a more limited grant than I understood was being requested? I think, Judge Tranch, it's the fact that Michigan has treated a request for a VFLQ in the past as sort of a doorway into the investigation. Certainly, Michigan could do that now with Sacred Heart. It would not be in their interest, given the arguments that they're making about standing to do that. So we just, again, say that we think it would be futile to go through that process because the Michigan Department of Civil Rights could take the very position that it wants to take in this litigation that it could also take if we were to go through that process as well. And just say it's not specific enough? That's correct. You're correct, Judge White. But isn't, okay, I mean, I think your fundamental point is that there's no exhaustion requirement. That's absolutely true. We have the option to go through that process, but we also have the option to come to federal court first. Because there is no exhaustion requirement, then the impetus is on us and we aren't penalized for choosing to go through the pre-enforcement route. Otherwise, several other pre-enforcement challenges that exist in the First Amendment space would be weeded out from the outset. There's pre-enforcement litigation on the First Amendment across the country and in this circuit right now. Just last week, a district court in Tennessee ruled on Tennessee's act about what teachers can and cannot say in the classroom. That was a pre-enforcement challenge. That the state made some of the very same arguments that the state of Michigan is making in this case. That there were not specific enough enforcement history. That the plaintiffs hadn't shown that what they want to teach on actually fell within the statute. And that there wasn't enough time because the plaintiffs hadn't gone through the state administrative process first. And yet the district court there had no problem saying that not only did those teachers satisfy what this court said in McKay and in subsequent cases, but also more broadly what the Supreme Court had set out in the SBA list. And I think it's just worth emphasizing, Your Honors, that that's all that Sacred Heart seeks here. It's just a straightforward application of SBA list. We don't seek an expansion of the standing doctrine as this court has described it. We don't seek to open the doors to everyone. The last 11 years that SBA list has been on the books, the wheels have not fallen off Article III jurisdiction and they would not fall off here. And just one last point on rebuttal, Your Honors. My friend on the other side said that religious employers are different than a Burger King. But the rhetoric that the Attorney General of Michigan has made, disparaging of the Catholic faith, telling people not to trust a Catholic who comes to their door unless they have a badge and not a rosary, doesn't make Sacred Heart feel comfortable that it will be treated differently than a Burger King. And so as this court said in online emergence v. Cameron, an Attorney General's public posturing can go to show a credible threat of enforcement. And that's exactly what we think we have shown here, not only by what the Attorney General has said, but what the state of Michigan has done in its enforcement. Thank you, Your Honors. Thank you. And once again, we thank you both for briefing an argument in a complex issue. These cases will be taken under advisement and an opinion issued in due course. You may call the next case.